UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DWAYNE MCNAIR,<br><br>　　　Petitioner,<br><br>v.<br><br>MATTHEW DIVRIS,<br><br>　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)　　Civil No. 22-cv-40017-MRG<br>)<br>)<br>)<br>)<br>) |

**ORDER ON PETITION FOR THE WRIT OF HABEAS CORPUS**

**GUZMAN, D.J.**

This is a habeas case. Before the Court is Petitioner Dwayne McNair's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. [ECF No. 1]. Petitioner alleges that the Commonwealth of Massachusetts ("Commonwealth") violated his Sixth Amendment speedy trial rights by taking roughly five years to bring him to trial. As relief, Petitioner asks this Court to vacate his sentence and all counts of conviction and remand for a new trial. Respondent Matthew Divris ("Respondent"), the Superintendent at North Central Correctional Institution ("NCCI") where Petitioner is incarcerated, opposes the petition. [ECF No. 25]. For the reasons that follow, the petition is **DENIED**.

**I.　BACKGROUND**

　　**a. Factual Background**[1]

---

[1] The following facts are taken from Petitioner's last reasoned state court decision: Commonwealth v. McNair, 158 N.E.3d 507, 511 (Mass. App. Ct. 2020). When a federal

On the evening of September 21, 2004, a twenty-three-year-old medical assistant ("Victim #1") was walking home in Boston when she was grabbed and pushed into a motor vehicle. McNair, 158 N.E.3d at 511 . When asked how old she was, the woman replied that she was fourteen. Id. Although she fought to escape, Victim #1 was taken to a garage-type shed and ultimately raped by two men. Id. Following these events, the men dropped Victim #1 off at a nearby park, after taking her cell phone, forms of identification, and other items from her purse. Id. The men then instructed Victim #1 not to watch as they drove away lest they return and kill her. Id. After the men left, Victim #1 flagged down a passing motorist, and was immediately taken to the hospital, where medical personnel administered a rape kit. Id.

Just one week later, on September 29, 2004, a nineteen-year-old college student ("Victim #2") had just arrived at her home in Boston when she was grabbed and pushed into a motor vehicle. Id. When asked her age, the woman said that she was fifteen years old. Id. Although she fought to escape, she was she was struck on the head with a firearm and was punched in the stomach. Id. Ultimately, Victim #2 was taken to a nearby park and raped by the two men. Id. After they took her forms of identification and other items from her purse, the men instructed her to get down

---

court reviews a habeas petition, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If the petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

and begin counting. Id. Once she heard the men drive away, she ran into a nearby building, where a security guard assisted her in calling 911. Id. at 511–12. Victim #2 was then taken to a hospital where a medical personnel administered a rape kit. Id. at 512.

Following Boston Police Department-led interviews of Victim #1 and Victim #2, the police suspected that the two incidents were connected. Id. As the Massachusetts Appeals Court ("MAC") explained, "[a]lthough the police were able to develop DNA profiles from specimens recovered from both rape kits, they had no suspects from which to conduct comparative analysis." Id. However, after several years, police interest became focused on Petitioner. Id. After observing Petitioner for a time, police learned that he lived with his mother, who had a garage-type shed on her property. Id. Police further learned that Petitioner drove a vehicle, registered in his own name, that matched the description provided by both victims. Id. Police were eventually able to recover a discarded cigarette from Petitioner, which they used to conduct a DNA sample. Id. That sample was a match to DNA associated with the rape kits conducted on Victim #1 and Victim #2. Id. After learning that Petitioner had a twin brother, police successfully obtained authority to collect a DNA sample from the identical twin and compared it to the rape kit -- and this sample too was a match. Id.

In July 2010, after being unable to distinguish between the twins' DNA, the police received a "CODIS hit" that indicated the involvement of a possible second assailant, Mr. Anwar Thomas. Id. Thomas was later indicted in connection with the 2004 crimes

and faced multiple life felonies as a result. Id. As trial approached in 2012, Thomas, a high school friend of the McNair twins who was able to tell them apart, agreed to testify against Petitioner. Id.

### a) Procedural Background

As this habeas petition is based on an alleged speedy trial violation, the Court will carefully review key dates in the record. On November 9, 2012, a Suffolk County, Massachusetts grand jury returned indictments against Petitioner that included eight counts of aggravated rape and two counts of armed robbery. [ECF No. 1 at 21, 23].[2] The initial indictment included additional counts for aggravated kidnapping, indecent assault and battery, assault and battery by means of a dangerous weapon, assault by means of a dangerous weapon, and assault and battery. [Id. at 23]. However, this initial set of indictments was dismissed, and "those counts were time barred by the time of the second set of indictments." [Id. at 23 n. 5].

Two weeks before the scheduled trial, on April 15, 2014, the Commonwealth filed a motion to continue the trial date for twelve weeks in order to attempt a new "DNA test that promised to be able to distinguish between identical twins[.]" [Id. at 22]. Petitioner opposed the motion, expressly asserting his right to a speedy trial. [ECF No. 24 at 2]. The motion judge denied the continuance, reasoning that determining the admissibility of the new DNA evidence would cause delay and noting

---

[2] Petitioner had been originally charged with the same offenses in the West Roxbury Division of the Boston Municipal Court on September 12, 2012. [ECF No. 25 at 5, n.4].

that the likelihood of the evidence passing a "gatekeeper hearing" such that it could be introduced at trial was "really very, very small." [ECF No. 1 at 22]. After the motion judge's denial, the Commonwealth filed a petition for extraordinary relief with a Single Justice of the Massachusetts Supreme Judicial Court ("SJC"). [ECF No. 24 at 3]. There, Petitioner once again expressly asserted his rights to a speedy trial. [Id.] On April 24, 2014, the Single Justice (Bostford, J.) denied the Commonwealth's petition. [ECF No. 24 at 3–4; ECF No. 9 at 384]. The Commonwealth then filed a motion to reconsider the denial of the motion to continue, which Petitioner opposed, again asserting his rights to a speedy trial. [Id. at 4]. The motion judge held a hearing on the Commonwealth's reconsideration motion on April 29, 2014, the same day that trial was scheduled to begin. [Id. at 4]. At that hearing, the motion judge denied the motion and ordered that the case remain on track for trial. [Id.] The prosecutor then informed the Court that based on the denial of the reconsideration motion, he would be filing a *nolle prosequi*[3] that day. [Id.]

As the MAC explained:

> The Commonwealth subsequently filed a *nolle prosequi* of the indictments, explaining in detail its investigation, its evidence against the defendant, and its decision to discontinue the prosecution, concluding that

---

[3] "A nolle prosequi is a strategic decision by the Commonwealth to cease pursuing charges. Its entry is thus an affirmative exercise of a prosecutorial tool to discontinue prosecution." Commonwealth v. Mogelinski, 40 N.E.3d 544, 549 n.4 (Mass. 2015) (citation omitted). See also Commonwealth v. Miranda, 610 N.E.2d 964, 966 (Mass. 1993) (holding that entry of nolle prosequi dismisses charges, rather than merely making them dormant, such that prosecution can reinstate charges only by filing them anew, and may not simply revive them).

5

> "the interests of justice require that a jury asked to decide a case of this seriousness and complexity should have the best available evidence in order to render its decision. As the Commonwealth has a strong basis to believe that the results of this testing will definitively inculpate (or, if not, conclusively exculpate) the defendant, the Commonwealth concludes that it has no responsible alternative to terminating the prosecution and conducting the state-of-the art forensic genome-sequencing in order to distinguish scientifically between the defendant and his twin brother."
>
> The Commonwealth indicated its intention to reindict. The defendant was released from custody.
>
> Some four months later, in September 2014, the defendant was reindicted on eight counts of aggravated rape and two counts of armed robbery based on the newly obtained DNA evidence, which inculpated the defendant and exculpated his twin. The defendant was again held in custody on high bail. The defendant moved to exclude the new DNA evidence after a lengthy period of discovery. Following a week-long evidentiary hearing, a second judge (trial judge) found that the new DNA testing and analysis "were based on generally accepted, valid scientific or statistical principles . . . and were unshaken by defense testimony." Acknowledging that additional indicia of reliability had not been established, however, the judge allowed the defendant's motion to exclude the evidence due to the potential for jury confusion.
>
> The defendant subsequently moved to dismiss the indictments on speedy trial grounds in August 2017, and the motion was denied. The defendant proceeded to trial in January 2018, where his defense was that the crimes were not committed by him but rather by his identical twin brother. After a week-long jury trial, the defendant was convicted on all charges.

[ECF No. 1 at 22–24].

On February 26, 2018, Petitioner filed a timely notice of appeal of his conviction. [ECF No. 24 at 6]. Petitioner's appeal alleged, among other things, that his speedy trial rights had been violated. [Id. at 7]. The MAC affirmed his conviction, rejecting Petitioner's speedy trial argument. McNair, 158 N.E.3d at 511. Petitioner applied for and was denied further appellate review by the SJC on February 12,

2021.[4]  Petitioner then timely filed the instant habeas petition in this Court on February 18, 2022.  [ECF No. 1].

## II. LEGAL STANDARD

### 1. *The Antiterrorism and Effective Death Penalty Act Standard ("AEDPA")*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") controls habeas review.  This Act commands district courts to deny a habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on . . . unreasonable [factual] determination[s]."  28 U.S.C. § 2254(d)(1)-(2).  A state court decision is contrary to federal law when, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts."  Rashad, 300 F.3d at 34–35.  A decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively.  Williams v. Taylor, 529 U.S. 362, 365 (2000).  In this Circuit, the state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision

---

[4] Commonwealth v. McNair, 165 N.E.3d 155 (2021) (SJC appeal denied without published opinion).  Where, as here, a state's highest appellate court denies an application for further review without comment, the federal court should "look through" that judgment to identify, and conduct Section 2254 review upon, the last reasoned state court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 805–06 (1991).

Here, the last reasoned state court decision is the Massachusetts Appeals Court's decision at 158 N.E.3d 507.  Accordingly, that decision is subject to the undersigned's review.  Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision—in this case, the MAC's rescript.").

7

unreasonable in the independent and objective judgment of the [reviewing] federal court." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (citation omitted). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

As stated previously, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on Petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If Petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad, 300 F.3d at 35.

*2. The Right to a Speedy Trial*

The first step for this Court is to determine what "clearly established Federal law" is at issue. Petitioner alleges that his Sixth Amendment speedy trial right was violated, as applied against the states under the Fourteenth Amendment's selective incorporation doctrine. See Klopfer v. North Carolina, 386 U.S. 213, 223 (1967) (incorporating the Sixth Amendment speedy trial right). The Supreme Court has delineated this right under the Barker balancing framework. Barker v. Wingo, 407 U.S. 514, 530-33 (1972); United States v. Reyes, 24 F.4th 1, 28 (1st Cir. 2022) ("the seminal Supreme Court case interpreting [the Sixth Amendment speedy trial right] [is] Barker v. Wingo, [which] supplies a quadripartite balancing test") (internal

quotations omitted). Under the Barker framework, courts are asked to examine (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant. Barker, 407 U.S. at 530.

## III.   DISCUSSION

### A.   The Speedy Trial Claim

A federal court reviewing a habeas petition may only grant relief if a state court decision was contrary to or involved an unreasonable application of federal law, or if there were unreasonable factual conclusions. 28 U.S.C. § 2254(d). Here, the federal law in question is the Sixth Amendment and its speedy trial right. When the MAC reviewed Petitioner's speedy trial claim, it relied on Commonwealth v. Dirico, which held that a defendant's right to a speedy trial under the Massachusetts state constitution is analogous to their Sixth Amendment speedy trial right under the U.S. Constitution. 111 N.E.3d 1062, 1075 (Mass. 2018). The Dirico court utilized the Barker factors in its analysis. Id. Thus, Dirico is the Massachusetts' courts application of Barker. As the MAC relied on Dirico in McNair's case, it used the proper Supreme Court precedent. The question now turns to whether the MAC unreasonably applied the Barker factors to Petitioner's case, or if the state court came to an unreasonable factual determination.

As stated above, when determining if a defendant's speedy trial rights have been violated, courts look to (1) the length of delay; (2) the reasons for delay; (3) the extent the defendant has asserted their speedy trial rights; and (4) any prejudice to the defendant. Barker, 407 U.S. at 530.

9

### 1. *Length of Delay*

The length of delay is a "double enquiry," where a court first looks to whether the delay is presumptively prejudicial so as to trigger judicial review, and, if it is, the court then considers the extent of the delay along with the other Barker factors. Doggett v. United States, 505 U.S. 647, 651–52 (1992). If the delay is not presumptively prejudicial, courts are not required to look into the other factors. Barker, 407 U.S. at 530. No set line has been drawn but typically one year of delay is presumptively prejudicial. Id. at n.1. Here, McNair was initially indicted in November 2012 and his trial started in January 2018. [ECF No. 1 at 21, 23]. The MAC correctly acknowledged that when calculating the delay in the case, the *nolle prosequi* paused the speedy trial clock and the clock resumed once those charges were reinstated. McNair, 158 N.E.3d at 514, n. 9. Accordingly, the MAC determined that excluding the four-month interim between the *nolle prosequi* and the reindictment, the length of delay was nearly five years (four years and seven months). Id. Roughly five years is well beyond the typical one-year window for presumptive prejudice; therefore, this delay was long enough to trigger inquiry into the other factors. See Barker, 407 U.S. at 530, 530 n. 31. In its opinion on Petitioner's appeal, the MAC explicitly acknowledged Petitioner had faced a "presumptively prejudicial delay" and found that the first Barker factor should weigh in Petitioner's favor because the length of the delay was "substantial" and "considerable" and went well beyond the bare minimum to trigger review. McNair, 158 N.E.3d at 514–15. This Court agrees.

### 2. *Reason for the Delay*

When inquiring into the reasons for delay, there is a sliding scale between bad faith delay and valid delay caused by due diligence. Rashad, 300 F.3d at 34 ("[D]eliberately dilatory tactics must be weighed more heavily against the state than periods of delay resulting from negligence. . . . [V]alid reasons . . . do[] not count against the state at all."). The MAC found that the delay, because of the *nolle prosqui,* was "caused by the Commonwealth's pursuit of newly announced DNA testing that could distinguish the [Petitioner] from his twin." McNair, 158 N.E.3d at 515. The MAC concluded that such a pursuit was not a deliberate attempt to delay the proceedings but rather a need for the Commonwealth to establish the identity of the perpetrator. Id. In fact, Petitioner's defense during the trial was that the DNA found at the scene belonged to his twin brother, and not to him. Id. at 513. The MAC similarly analyzed the time following the re-indictment and concluded that that discovery and issues around the *Daubert* hearing were novel and complex, which required time to efficiently litigate the issues. The MAC found that there was "no indication that the Commonwealth was the cause of undue delay" during this time period. Id. at 515.

Petitioner nevertheless alleges bad faith in the Commonwealth's pursuit and argues that the MAC unreasonably applied the facts to this factor because the trial court had made comments that the DNA evidence would have been denied, even if obtained. [ECF No. 24 at 14]. However, Petitioner fails to provide clear and convincing evidence that it was unreasonable to find that any delay during this time period was not deliberate or done in bad faith. The MAC investigated Petitioner's

11

argument and emphasized that there "may be a case where the Commonwealth's pursuit of additional evidence, at the expense of the defendant's speedy trial rights, is patently unreasonable" but concluded that this was not one of those situations. McNair, 158 N.E.3d at 516. The MAC looked at the findings of the trial judge and placed reasonable weight on the fact that "there was no indication that the Commonwealth was unprepared for trial or otherwise motivated to delay the trial for the sake of delay." Id. at 515. Instead, the MAC considered how Petitioner would argue that he was not guilty because his twin brother could not be excluded and that the Commonwealth's attempt to distinguish the evidence from his twin was "not a frivolous lark but rather a serious pursuit in the interests of justice." Id. at 516. McNair's evidence and arguments for his habeas petition are the same considered by the MAC and therefore, cannot be proof of clear and convincing evidence of unreasonableness. See Teti, 507 F.3d at 59 ("[Petitioner] tries to refute the MAC's factual determinations by employing the same documents already considered by the state courts. That approach fails."). Concurring with the MAC, the delays between Petitioner's arraignment and his trial had valid reasons. Accordingly, the Court weighs this factor against Petitioner.

### 3. *Assertion of the Speedy Trial Right*

The speedy trial doctrine puts some onus on a criminal defendant to assert their rights. See Barker, 407 U.S. at 527; United States v. Perez-Cubertier, 958 F.3d 81, 91 (1st Cir. 2020) (A defendant has "some responsibility to assert his speedy trial claim."). Courts should look to the "timeliness and frequency" to which the defendant

asserts the right. Barker, 407 U.S. at 527. The sooner and more often a petitioner asserts their speedy trial rights, the more this factor will weigh in their favor. Id. Failing to assert one's speedy trial right for the entire time between indictment and arrest may weigh against a defendant in their habeas petition. Perez-Cubertier, 958 F.3d at 91. However, when a defendant does assert their speedy trial right, it is strong evidence of a deprivation. Barker, 407 U.S. at 531–32. The MAC in Petitioner's case acknowledged that he first raised his speedy trial right in April of 2014, in opposition to the Commonwealth's motion for continuance. McNair, 158 N.E.3d at 516. The MAC then highlights that following the April 2014 *nolle prosequi* and September 2014 reindictment, Petitioner did not immediately move for dismissal or assert his speedy trial rights. Id. Instead, he waited an additional three years, until August 2017, to reassert his right to a speedy trial. Id. Consequently, the MAC found that the record did "not indicate the [petitioner's] zealous pursuit of his right to a speedy trial." Id.

Petitioner argues against these findings because the MAC did not acknowledge that he asserted his speedy trial rights five times in 2014,[5] and therefore, the MAC could not have reasonably concluded that he failed to zealously pursue his speedy trial rights. [ECF No. 24 at 15–16 (citations omitted)]. However, there is nothing in the MAC's opinion that states that Petitioner did not repeatedly assert his speedy

---

[5] "[Petitioner] asserted his speedy trial rights first on April 16, 2014, in objecting to the Commonwealth's request for a continuance; then on April 16, 2014, at the hearing on the continuance; then on April 22, 2014, when the Commonwealth sought relief under G.L. c. 211 § 3; then on April 29, 2014, when the Commonwealth sought reconsideration of their denial of motion to continue; again on April 29, 2014, when the Commonwealth filed a nolle prosequi . . . ." [ECF No. 24 at 15–16 (citations omitted)].

13

trial rights before the *nolle prosequi* was issued. Instead, the MAC, correctly, emphasized that once Petitioner was reindicted, he spent three years participating in the pretrial proceedings without any mention of a speedy trial violation. McNair, 158 N.E.3d at 518. The lack of any assertions regarding Petitioner's speedy trial rights during the three years following re-indictment supports the findings that Petitioner failed to "assiduously assert that right." Id. Petitioner has failed to provide clear and convincing evidence to demonstrate that it was unreasonable for the MAC to conclude that his failure to assert his right to a speedy trial for three years following his re-indictment should weigh against a conclusion that Petitioner zealously pursued his speedy trial rights. Although a speedy trial assertion typically is given strong weight, Petitioner's failure to renew his speedy trial arguments for three years following reindictment weighs against Petitioner's case.

### 4. *Prejudice*

The final factor for the Court to consider is prejudice towards Petitioner caused by the delay. This factor looks at the interests of Petitioner, and the Supreme Court has identified the following relevant interests: "(i) [] prevent[ion] [of] oppressive pretrial incarceration; (ii) [] minimiz[ation] of anxiety and concern of the accused; and (iii) [] limit[ing] the possibility that the defense will be impaired." Barker, 407 U.S. at 532. "These interests are factual issues on which the state courts are given deference." Libby v. Divris, 725 F. Supp. 3d 99, 110 (D. Mass. 2024).

The MAC concluded in this case that there was no prejudice to Petitioner because there was not any evidence that Petitioner suffered impairment to his

defense because of any delay in the proceedings. McNair, 158 N.E.3d. at 517. Petitioner argues that the MAC unreasonably concluded that there was no prejudice because Petitioner had clearly established that he suffered loss of liberty, and anxiety satisfying the first and second interests. [ECF No. 24 at 17–19]. However, the MAC did acknowledge that "there were prejudicial consequences of the defendant's lengthy detention" and that Petitioner "suffered anxiety and concern over [ ]his case and its negative media attention, [his] loss of liberty and employment, . . . the impairment of [his] relationship with [his] family and child, and the disruption to [his] life." Id. at 517. The MAC, nonetheless, concluded that Petitioner failed to show any prejudice to third interest based on the lack of "any loss of evidence material to his defense by reason of either a failure of a witness'[s] memory, the unavailability of any potential witness, or any other cause of prejudice." Id. (alteration in original). The MAC concluded that this failure alone was sufficient to establish lack of prejudice to Petitioner. Id. McNair has failed to put forth clear and convincing evidence that such determination was unreasonable. In fact, the Supreme Court emphasized in Barker that the third interest is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532. Therefore, it was not unreasonable for the MAC to provide more weight to the third interest. Thus, because Petitioner did not demonstrate or argue that he suffered any damage to his defense, this factor weighs against him, just as the MAC determined.

    5.    *Final Balancing*

Though the Supreme Court in <u>Barker</u> provided guidance to courts on how to conduct the balancing test, 407 U.S. at 530, and the First Circuit has described the inquiry as "more judicial art than science." <u>Look v. Amaral</u>, 725 F.2d 4, 8 (1st Cir. 1984). When evaluating all of the factors above, the Court finds that Petitioner's delay was presumptively prejudicial and that he asserted his speedy trial right. However, such presumption is outweighed by the delay having valid reasons, such as Petitioner's failure to reassert his speedy trial right for three years following re-indictment, and by his failure to show prejudice to his defense. The MAC made similar conclusions while applying the same standard.

## IV.    CONCLUSION

The MAC's decision was a reasonable application of Supreme Court precedent from <u>Barker v. Wingo</u>, 407 U.S. 514. Moreover, Petitioner has failed to put forth clear and convincing evidence to rebut the presumption of correctness that attaches to the factual conclusions of the state courts. For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

## IV.    CERTIFICATE OF APPEALABILITY

The statute governing appeals of final orders in habeas corpus proceedings provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved

16

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Muller v. Goguen, 385 F. Supp. 3d 121, 129–30 (D. Mass. 2019) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)). Another session of this Court has named this as the "debatable-among-jurists-of-reason standard" and to meet this standard Petitioner "must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

As stated above, McNair has not made a substantial showing that he was denied a constitutional right. Therefore, the Court declines to issue a COA.

**SO ORDERED.**

Dated: March 31, 2025

                                              /s/ Margaret R. Guzman
                                              Margaret R. Guzman
                                              United States District Judge